FILED
SUPERIOR COURT
OF GUAM

2023 JUN 22 AM 11: 05

CLERK OF COURT

BY:

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | CRIMINAL CASE NO. CF0222-23 |
| vs. | **DECISION AND ORDER** |
| **WILLIKEY PATTERSON KIKKU,** | |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on May 16, 2023, for hearing on Defendant **WILLIKEY PATTERSON KIKKU's** ("Defendant") Motion to Dismiss. Present were Assistant Attorney General Renaida San Nicolas on behalf of the People of Guam and Defendant with counsel, Assistant Public Defender John P. Morrison. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On April 11, 2023, Defendant was indicted with one count of Possession of a Firearm without a Firearms Identification Card (As a Third Degree Felony) and one count of Possession of a Schedule II Controlled Substance (As a Third Degree Felony). (Indictment, Apr. 11, 2023). These charges stem from the discovery of a firearm and two baggies with suspected methamphetamine after the effectuation of a traffic stop on or about April 2, 2023. (Decl. of Renaida San Nicolas, Magistrate's Compl., Apr. 3, 2023).

*People v. Kikku*
Case No. CF0222-23
Decision and Order

On April 21, 2023, Defendant filed the instant Motion to Dismiss. The Government did not file a written opposition. On May 16, 2023, at the calendared Motion Hearing, the Court placed the matter under advisement without further argument from the parties.

## DISCUSSION

Defendant moves the Court to dismiss the First Charge of Possession of a Firearm without a Firearms Identification Card (As a Third Degree Felony), arguing that the statute the charge is based on is unconstitutional in light of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S.Ct. 2111 (2022). *See generally,* Mot. Dismiss, Apr. 21, 2023. Although the Government did not file an Opposition to the Motion to Dismiss, the Court still has a duty to examine the merits of the motion. *See Quitugua v. Flores,* 2004 Guam 19 ¶¶ 27-28.

The First Charge of Possession of a Firearm without a Firearms Identification Card alleges Defendant violated 10 G.C.A. § 60106. Under section 60106,

> No person shall own, possess, use, carry or acquire any firearm which is lawful under § 60103 unless he shall have first obtained from the [Guam Police Department] an identification card evidencing his right to such ownership, possession, use or carrying, concealed or otherwise, as stated upon the face of the card; except that any person may use and possess a firearm at any shooting gallery licensed pursuant to § 60105, et seq., without first obtaining a permit as otherwise required by this Section. Said card shall be in the possession of the holder and on his person whenever he is using or has in his possession a firearm.

10 G.C.A. § 60106. Defendant argues that section 60110 "imposes burdens on possession which are not consistent with the Nation's historical tradition of firearm regulation" pursuant to *Bruen.* (Mot. Dismiss at 3).

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. In *Bruen,* the Supreme Court of the United States announced a new standard of review when evaluating whether a regulation violates the Second Amendment and expressly rejected the previous approach widely used by federal courts. The Supreme Court held that the two-step approach adopted after *District of Columbia v. Heller,* 554 U.S. 570 (2008), combining history with means-end scrutiny, was "one step too many." 142 S.Ct. at 2127. *Bruen*

declared that the proper analytical framework for assessing Second Amendment challenges is as follows:

> "In keeping with *Heller,* we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. ***Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.*** Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Id.* at 2126 (citation omitted) (emphasis added).

The Supreme Court acknowledged that in some cases, the historical inquiry will not be straightforward. *Id.* at 2131. For "cases implicating unprecedented social concerns or dramatic technological changes," courts should take "a more nuanced approach." *Id.* at 1232. In those situations, courts must conduct a "historical inquiry that . . . will often involve reasoning by analogy." *Id.* "Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Id.* *Bruen* provided two metrics for conducting this analysis: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132-33. "Therefore, whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are 'central' considerations when engaging in an analogical inquiry." *Id.* "Analogical reasoning is neither a regulatory straightjacket nor a regulatory blank check." *Id.* "Analogical reasoning requires on that the government identify a well-established and representative historical *analogue,* not a historical *twin.* So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 2133 (emphasis in original).

The Second Amendment confers "the individual right to possess and carry weapons in case of confrontation." *Heller,* 554 U.S. at 592. However, like other individual rights, "the right secured by the Second Amendment is not unlimited. . . . [It is] not a right to keep and carry any

weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626 (citations omitted). "For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." *Id.* (citations omitted). "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27.

Section 60106 does not prevent law-abiding citizens from possessing a firearm in their home or elsewhere, but rather regulates the manner in which such law-abiding citizens may exercise their Second Amendment rights. On Guam, 10 G.C.A. § 60108 restricts certain individuals from obtaining firearm identifications cards under section 60106, including convicted felons, aliens, those adjudicated mentally incompetent, and minors. *See* 10 G.C.A. § 60108(b). "The Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions." *Bruen,* 142 S.Ct. at 2156 (citing *Heller,* 554 U.S. at 581). The *Bruen* Court made clear that "nothing in [it's] analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes ... [,] which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens." 142 S.Ct. at 1238 n.9 (citing *Heller,* 554 U.S. at 635). Further, as set forth by the Government, other jurisdictions have laws analogous to section 60106. *See, e.g.,* H.R.S. § 134-2(a) (stating "no person shall acquire the ownership of a firearm . . . until the person has first procured . . . a permit to acquire the ownership of a firearm.").

Accordingly, the Court finds that 10 G.C.A. §§ 60106 is consistent with the Nation's historical tradition of firearm regulation and denies Defendant's Motion to Dismiss.

//

//

//

//

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Dismiss. Parties shall return for a Status Hearing on **July 17, 2023** at **10:00 a.m.**

**IT IS SO ORDERED** this 22ND day of June, 2023.

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam